UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JASON B. DALE,<br><br>      Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>      Respondent. | Case No. 08-cv-424-JPG |

**MEMORANDUM AND ORDER**

This matter comes before the Court on petitioner Jason B. Dale's ("Dale") motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 1). The government has responded to the motion (Doc. 14), and Dale has replied to that response (Doc. 20).

**I.**  **Background**

On November 9, 2005, Dale was indicted on one count of conspiring to manufacture and distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846.

Dale was represented at all relevant parts of the district court proceedings by attorney Jonathan A. Mitchell. On May 4, 2006, Dale pled guilty without a written plea agreement but was allowed to remain free on bond. However, before the sentencing date, the Court revoked Dale's bond based on his consumption of alcohol and his contact with and threats to kill Maria Winchester, a potential witness in his case, at a Pasta House restaurant.

On August 3, 2006, the Court held a sentencing hearing at which Dale's counsel objected to four recommendations in the presentence investigation report ("PSR"): (1) the application of an enhancement under United States Sentencing Guideline Manual[1] ("U.S.S.G.") § 2D1.1(b)(1)

---

[1]Unless otherwise noted, the references to the guidelines in this order are to the 2005 United States Sentencing Guidelines Manual.

for possession of a dangerous weapon during the commission of the offense, (2) the inapplicability of the safety valve provision of U.S.S.G. § 5C1.2, (3) the application of an enhancement for obstruction of justice under U.S.S.G. § 3C1.1 and (4) the inapplicability of the reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b).  Dale confirmed on the record that these were his only four objections to the PSR and that, after talking with Mitchell, he was withdrawing the first, his challenge to the weapon enhancement.

The Court heard testimony from six government witnesses, including Winchester, and two defense witnesses.  Chandra Shively, a third defense witness, took the stand but chose to assert her Fifth Amendment right against self-incrimination.  Based on this testimony, the Court found by a preponderance of the evidence that Dale's relevant conduct was at least 3,000 kilograms but less than 10,000 kilograms of marihuana equivalency units (based on a combination of methamphetamine and crystal methamphetamine), which under U.S.S.G. § 2D1.1 yielded a base offense level of 34.  The Court also found by a preponderance of the evidence that Dale possessed a dangerous weapon during the commission of his offense, which increased his offense level by two points under U.S.S.G. § 2D1.1(b)(1) and prevented him from benefitting from the safety valve under U.S.S.G. § 5C1.2, and that Dale obstructed justice when he threatened Winchester, which increased his offense level by two points under U.S.S.G. § 3C1.1.  The Court further found Dale was entitled to a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b), yielding a total offense level of 35.  In light of Dale's criminal history category of I, his sentencing range was 168 to 210 months in prison.  The Court sentenced Dale to serve 180 months in prison.

On August 16, 2006, Dale appealed to the Seventh Circuit Court of Appeals, where attorney Jeffrey Brandt represented Dale.  In his appeal he argued that the Court erred in

imposing the obstruction of justice enhancement and that his sentence was unreasonable in light of 18 U.S.C. § 3553(a). On August 17, 2007, the Court of Appeals affirmed Dale's conviction and sentence, and on September 10, 2007, it issued its mandate. *See United States v. Dale*, 498 F.3d 604 (7th Cir. 2007). Dale did not petition the Supreme Court for a writ of *certiorari*.

Dale filed this timely § 2255 motion on June 9, 2008. In it, he argues that his trial and appellate counsel were constitutionally ineffective in a variety of ways:

1. trial counsel failed to object to the admission of hearsay at the sentencing hearing;
2. trial counsel failed to conduct a reasonable investigation into the available testimony of Pam Gregory, an eyewitness to the alleged threats to Winchester upon which the obstruction of justice enhancement was based, and Mike Rednour, an eyewitness to alleged threats and violence against government witness Rebecca Riley;
3. trial counsel failed to call Gregory and Rednour at sentencing, though they were available and allegedly more powerful than the witnesses called, and failed to investigate Pasta House patrons who could have witnessed the alleged threat to Winchester;
4. trial counsel failed to conduct pre-trial discovery, file a motion to suppress and effectively cast doubt on or object to witnesses' testimony regarding Dale's possession of a gun;
5. trial counsel improperly induced Dale to withdraw his objection to the weapon enhancement;
6. trial counsel failed to investigate the prosecution's evidence to discover exculpatory evidence and failed to pursue a mental health defense to the charge;
7. trial counsel failed to object to the weapon enhancement based on Dale's father's possession of the weapon;
8. trial counsel failed to present a defense of voluntary intoxication to the obstruction of justice enhancement when the defense was clearly discernable from the facts in the PSR;
9. trial counsel failed to object to James Garner's testimony regarding Dale's possession of a gun and to argue the gun was not connected to the offense of conviction;
10. trial counsel failed to investigate Dale's defense of diminished capacity;
11. appellate counsel failed to argue a voluntary intoxication or mental health defense;
12. appellate counsel failed to make a claim of ineffective assistance of trial counsel;
13. appellate counsel failed to move for a re-hearing before the Court of Appeals; and

3

  14. cumulative error.

In response, the government argues that counsel was not constitutionally ineffective as Dale alleges. In reply, Dale argues for the first time that his trial counsel was ineffective for allowing the Court to sentence Dale based on unreliable information in violation of his due process rights. He also reasserts his theories of ineffectiveness of trial counsel.

**II.** **§ 2255 Standard**

The Court must grant a § 2255 motion when a defendant's "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. However, "[h]abeas corpus relief under 28 U.S.C. § 2255 is reserved for extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). Relief under § 2255 is available only if an error is "constitutional, jurisdictional, or is a fundamental defect which inherently results in a complete miscarriage of justice." *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997) (quotations omitted). It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively demonstrate that the prisoner is entitled to no relief." 28 U.S.C. § 2255.

**III.** **Analysis**

Each of Dale's arguments is presented through the framework of his Sixth Amendment right to counsel. The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right to assistance of counsel encompasses the right to *effective* assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970); *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009).

A party claiming ineffective assistance of counsel bears the burden of showing (1) that

his trial counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009), *cert. denied*, 130 S. Ct. 2431 (2010); *Fountain v. United States*, 211 F.3d 429, 434 (7th Cir. 2000).

       To satisfy the first prong of the *Strickland* test, the plaintiff must direct the Court to specific acts or omissions of his counsel.  *Wyatt*, 574 F.3d at 458.  The Court must then consider whether in light of all of the circumstances counsel's performance was outside the wide range of professionally competent assistance.  *Id.*  The Court's review of counsel's performance must be "highly deferential[,] . . . indulg[ing] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689; *accord Wyatt*, 574 F.3d at 458.  Counsel's performance must be evaluated keeping in mind that an attorney's trial strategies are a matter of professional judgment and often turn on facts not contained in the trial record.  *Strickland*, 466 U.S. at 689.  The Court cannot become a "Monday morning quarterback."  *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

       To satisfy the second prong of the *Strickland* test, the plaintiff must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.  *Fountain*, 211 F.3d at 434; *Adams v. Bertrand*, 453 F.3d 428, 435 (7th Cir. 2006).  "A reasonable probability is defined as one that is sufficient to undermine confidence in an outcome."  *Adams*, 453 F.3d at 435 (citing *Strickland*, 466 U.S. at 694).

       Although many of Dale's arguments overlap substantially, the Court reviews each alleged instance of ineffective assistance of counsel in turn as they are set forth in Dale's motion and memorandum in support.

      A.      <u>Ground 1:  Hearsay at Sentencing</u>

Dale believes his trial counsel was constitutionally ineffective because he failed to object to Winchester's hearsay testimony that Dale threatened Winchester when he was talking to Winchester's stepfather over the telephone.  Apparently Winchester did not hear Dale make any threats.  Dale claims Mitchell should have objected to the testimony because it was hearsay and should have asserted Dale's Sixth Amendment Confrontation Clause right to cross-examine Winchester's stepfather.  The government notes that the Federal Rules of Evidence and the right to confront witnesses do not apply during sentencing proceedings so long as the evidence is reliable, so Mitchell was not deficient for failing to make this argument.

Indeed, defense counsel is not deficient for failing to make a frivolous or losing argument.  *Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005);  *Whitehead v. Cowan*, 263 F.3d 708, 731 (7th Cir. 2001).  A hearsay objection during a sentencing proceeding would have been a frivolous and losing argument because, as the government points out, the rules of evidence and the right to confront witnesses do not apply in sentencing proceedings.  *United States v. Betts*, 576 F.3d 738, 744 (7th Cir. 2009) (citing *Williams v. New York*, 337 U.S. 241, 250-51 (1949)), *cert. denied*, 130 S. Ct. 1027 (2010).  Nevertheless, Mitchell highlighted to the Court that the statements were not reliable because Winchester did not hear Dale make them.  This argument was well within the realm of competent performance in light of the rules governing the sentencing proceeding.

In addition, Dale does not explain why he suffered prejudice from the Court's consideration of Winchester's testimony about Dale's earlier threats.  In truth, based on Dale's history of threats and violence and the evidence of his threat at the Pasta House, the Court would have imposed the obstruction of justice enhancement even if it had not heard of the earlier

6

threats to Winchester.  Dale simply suffered no prejudice from Mitchell's failure to object to the hearsay testimony at sentencing.

In his reply, Dale urges the Court to construe this argument as asserting that Mitchell was constitutionally ineffective for failing to challenge the reliability of the evidence at sentencing.  The Due Process Clause requires that information upon which a sentencing decision is based bear "sufficient indicia of reliability to support its probable accuracy."  U.S.S.G. § 6A1.3(a); *see United States v. Roche*, 415 F.3d 614, 618 (7th Cir. 2005).  Dale cannot raise this argument for the first time in his reply brief.  It has long been established that arguments in support of the motion that are raised for the first time in a reply brief are waived.  *Wright v. United States*, 139 F.3d 551, 553 (7th Cir. 1998).  This rule holds true even if the movant is proceeding *pro se*.  *Id.*; *Wilson v. Giesen*, 956 F.2d 738, 741 (7th Cir. 1992);  *United States v. Joiner*, 847 F. Supp. 604, 606-7 (N.D. Ill. 1994), *aff'd*, 78 F.3d 586 (7th Cir. 1996).  This is because the opposing party does not have an opportunity to respond to the new arguments in the reply brief.  *See Kauthar SDN BHD v. Sternberg*, 149 F.3d 659, 668 (7th Cir. 1998).  Therefore, Dale has waived this argument.

Even if Dale had not waived the argument, the Court would reject it.  Other than bald assertions that the information used against him was unreliable, Dale has pointed to no information Mitchell could have discovered or argument Mitchell could have made to convince the Court the information it heard at sentencing was unreliable.  When a § 2255 petitioner faults his attorney for failing to object and present evidence at trial or at sentencing, he bears the burden of demonstrating what evidence the attorney should have presented and that the presentation of such evidence had a reasonable probability of changing the result.  *Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005);  *Berkey v. United States*, 318 F.3d 768, 774

(7th Cir. 2003). Here, Mitchell made good arguments at sentencing, and Dale has not specified what more Mitchell could have said to convince the Court the information on which it relied in sentencing Dale was unreliable. Dale has simply not shown any deficiency or prejudice from Mitchell's failure to challenge the reliability of the information the Court used to sentence him.

    B.    <u>Ground 2: Failure to Investigate Potential Witnesses Prior to Sentencing;
Ground 3: Failure to Call Witnesses at Sentencing</u>

Dale argues Mitchell failed to conduct a reasonable investigation of known and potentially important eye-witnesses, namely, (1) Pam Gregory, who he believes would have testified that Dale did not threaten Winchester during the Pasta House incident, (2) Mike Rednour, who he believes would have testified concerning the allegations that Dale had choked and threatened Riley when Dale thought she was cooperating with the government and (3) other Pasta House patrons who could have testified about Dale's alleged threat to Winchester at the restaurant.

Dale also claims Mitchell was constitutionally ineffective because he failed to call Gregory, Rednour and other Pasta House patrons to testify regarding the facts relating to the obstruction enhancement. Instead, Dale alleges, Mitchell called weaker witnesses: Chandra Shively, who asserted her Fifth Amendment right against self-incrimination; Matt Carr, who was Dale's brother-in-law and therefore subject to accusations of bias; and Charles Shively, who had only known Dale for a little more than a year and who did not witness the Pasta House incident with Winchester.

An attorney has "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland v. Washington*, 466 U.S. 668, 691 (1984); *accord Wiggins v. Smith*, 539 U.S. 510, 521 (2003)*; Adams v. Bertrand*, 453 F.3d 428, 436 (7th Cir. 2006). An attorney does not have to investigate every conceivable line

8

of mitigating evidence as long as his decision not to investigate a particular line was reasonable from his perspective at the time he made the decision to forego the investigation. *Wiggins*, 539 U.S. at 521-22; *Adams*, 453 F.3d at 436; *Brown v. Sternes*, 304 F.3d 677, 692 (7th Cir. 2002). Strategic choices to limit an investigation are reasonable if "reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91; *accord Wiggins*, 539 U.S. at 521.

When a petitioner accuses his counsel of failing to investigate his case, in order to establish prejudice he must point to "sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced." *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003) (internal quotations and citation omitted); *accord Richardson v. United States*, 379 F.3d 485, 488 (7th Cir. 2004). He cannot rely on vague allegations that the investigation was insufficient or would have yielded favorable evidence. *See Hardamon*, 319 F.3d at 951.

Similarly, as noted above, when a § 2255 petitioner faults his attorney for failing to present evidence, he bears the burden of demonstrating what evidence the attorney should have presented and that the presentation of such evidence had a reasonable probability of changing the result. *Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005); *Berkey v. United States*, 318 F.3d 768, 774 (7th Cir. 2003). Self-serving speculation about what a witness might have said is not sufficient to support a claim of ineffective assistance of counsel for failure to call the witness. *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)

It was a reasonable decision not to investigate and call Gregory as a witness at Dale's sentencing. While she might have been able to testify to the events at Dale's table at Pasta House, which would likely have been duplicative of Carr's testimony, she was not in the vicinity

of Dale when he allegedly threatened Winchester on his way out of the restaurant. Thus, she would have no personal knowledge about whether Dale threatened Winchester that evening as alleged. Furthermore, Dale has not provided a comprehensive showing as to what Gregory would have said had she been called to testify. Without that information, there is nothing to show that Mitchell's failure to call her would have had a reasonable probability of changing the result of the proceedings.

As for Rednour, again Dale has not provided a comprehensive showing of the testimony he would have offered had he been called and that such information would have had a reasonable probability of changing the outcome of the proceedings. In fact, regardless of whether the Court believed Riley's testimony about Dale's prior threats and violence to her, the Court still would have found that Dale threatened Winchester at the Pasta House based on eyewitness testimony of the threat.

As for the other unknown Pasta House patrons the evening Dale threatened Winchester, Dale has not specified what their testimony would have been and how it had a reasonable chance of benefitting him. Again, he has not demonstrated prejudice from Mitchell's failure to investigate those witnesses and call them at sentencing.

Mitchell's choice to call the witnesses he did was objectively reasonable and within the bounds of competent assistance, and Dale has not shown how his failure to investigate other witnesses and call them to testify was prejudicial to his case.

    C.    <u>Ground 4:  Failure to Conduct Discovery;</u>
           <u>Ground 7:  Failure to Object to Weapon Enhancement Based on Co-conspirator Possession;</u>
           <u>Ground 9:  Failure to Impeach Garner</u>

Dale faults Mitchell for failing to conduct discovery regarding Dale's alleged possession of a weapon in relation to a drug-trafficking offense and for failing to object to the enhancement

because it was based on a co-conspirator's possession of firearms. Dale believes proper inquiry would have revealed that his co-conspirator/co-defendant father possessed guns, not Dale himself, and that there was no evidence those guns were loaded, were used in connection with their drug activities or were used by Dale himself. He suggests James Garner's testimony that he saw Dale with a gun while they were using methamphetatime was not credible. Dale further argues Mitchell should have filed a motion to suppress evidence of the gun and hints that the failure to mention a gun in the indictment somehow makes the enhancement improper.

Mitchell was not deficient in his performance with respect to the weapon enhancement. As a preliminary matter, Dale agreed to withdraw his objection to the gun enhancement at the sentencing hearing, stating that no threats or promises had been made to him to withdraw that objection and that he was doing so freely and voluntarily. He has no grounds now for complaining that Mitchell's performance was deficient or that he suffered prejudice in light of the fact that he agreed with Mitchell that the enhancement was warranted. In light of his free and voluntary withdrawal of the objection, Dale suffered no prejudice from Mitchell's failure to seek suppression of the gun.

Furthermore, the arguments Dale claims Mitchell should have made were without merit. Therefore, Mitchell was not deficient for failing to raise them. *Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005); *Whitehead v. Cowan*, 263 F.3d 708, 731 (7th Cir. 2001). For example, it made no difference to the gun enhancement that most of the guns referenced belonged to Dale's father, that they were not loaded or that Dale did not personally use them.[2] The

---

[2]Contrary to Dale's assertions, *United States v. Acosta*, 474 F.3d 999 (7th Cir. 2007), does not govern this case. *Acosta* dealt with the enhancement under U.S.S.G. § 3B1.4 for use of a minor, which can only be imposed if a defendant affirmatively acts to use the minor. *Acosta*, 474 F.3d at 1003. The enhancement under U.S.S.G. § 2D1.1(b)(1) for possessing a dangerous weapon during the commission of the offense can be imposed for conduct of a co-conspirator

enhancement was supported by Garner's testimony that Dale himself possessed a gun in connection with his drug activities. That alone is sufficient to support the gun enhancement. It is also irrelevant that the gun enhancement was not charged in the indictment; it is a sentencing factor, not an element of the crime, so it need not be charged. The failure to charge the gun in the indictment would only be problematic if the enhancement was used to raise Dale's punishment beyond the statutory maximum sentence called for by the offense charge and the conduct admitted by Dale in his plea colloquy. *See, generally, United States v. Booker*, 543 U.S. 220 (2005); *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The gun enhancement in this case did not cause Dale's punishment to exceed the statutory maximum established for the crime to which he pled guilty.

As for Mitchell's failure to discredit Garner's testimony or to prove the guns were unrelated to the offense of conviction, again, Dale has not specified what evidence Mitchell should have presented other than Dale's own self-serving statements or what argument he should have made that would have had a reasonable probability of causing the Court to disbelieve Garner or find the guns unrelated to the offense. Mitchell tried to impeach Garner by highlighting differences in his proffer statement and his testimony and by calling into doubt his memory in light of his drug use, but all to no avail. Dale has not said what more Mitchell should have done, so the Court cannot find Mitchell was deficient.

Dale also accuses Mitchell of failing to object to Garner's testimony about statements Dale made which Dale believes were hearsay. First, Dale's statements were not hearsay because they were admissions of a defendant. *See* Fed. R. Evid. 801(d)(2)(A). Second, as noted above, a

---

that is reasonably foreseeable to the defendant. *See United States v. Emerson*, 501 F.3d 804, 815 (7th Cir. 2007).

hearsay objection during a sentencing proceeding would have been a frivolous and losing argument because the rules of evidence do not apply in sentencing proceedings. *United States v. Betts*, 576 F.3d 738, 744 (7th Cir. 2009) (citing *Williams v. New York*, 337 U.S. 241, 250-51 (1949), *cert. denied*, 130 S. Ct. 1027 (2010)). Mitchell was not deficient for failing to object to Garner's testimony as hearsay.

In addition, Dale has not provided any theory or any argument Mitchell could have made in an effort to suppress the gun about which Garner testified. Until Dale can point to what Mitchell should have argued that had a reasonable probability of changing Dale's sentence, the Court cannot say that Mitchell's failure to make the argument was prejudicial.

      D.      Ground 5:  Withdrawal of Objection to Weapon Enhancement

Dale argues Mitchell was constitutionally deficient by advising him that withdrawing his objection to the gun enhancement would not increase his sentence and by not preparing better for the sentencing hearing. He argues that absent counsel's lack of preparation, his sentencing range would have been 33 to 75 months.

Mitchell's recommendation to withdraw the objection to the weapon enhancement was reasonable based on the information in the PSR showing that the enhancement was likely warranted based on Dale's possession of a firearm and his father's reasonably foreseeable possession of firearms in connection with the conspiracy. Had Dale maintained the objection and the Court found it to be meritless, Dale would likely have received the two-point enhancement *and* would have risked losing his three-point reduction for acceptance of responsibility. That reduction was already on shaky ground in light of the fact that only rarely does a court award an acceptance of responsibility reduction at the same time as an obstruction of justice enhancement. *See* U.S.S.G. § 3E1.1, app. note 4 ("Conduct resulting in an

13

enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct.  There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply.").  In fact, the PSR recommended the Court refrain from awarding an acceptance reduction.  Had Mitchell not recommended withdrawing the objection, Dale would have still received the weapon enhancement (as discussed below), likely lost the acceptance of responsibility reduction and ended up with a sentencing range of 235 to 293 months, substantially higher than the 168 to 210 month range actually found.

More importantly, even if Dale had not withdrawn his objection to the gun enhancement, the Court would have imposed it anyway.  Dale has not specified what Mitchell could have argued in opposition to the enhancement that would have had a reasonable probability of changing the Court's decision to impose the enhancement, especially in light of Garner's testimony and Dale's father's possession of weapons in connection to the conspiracy that was reasonably foreseeable to Dale.  Thus, Mitchell's advice to Dale that withdrawing the objection to the enhancement would not increase his sentence was accurate, competent advice, and Dale suffered no prejudice as a result.

  E.  <u>Ground 6:  Failure to Investigate Government's Evidence;</u>
     <u>Ground 10:  Failure to Argue Diminished Capacity</u>

Dale believes Mitchell was deficient because he failed to investigate the government's evidence and discover exculpatory evidence.  Specifically, he claims Mitchell should have been alerted by the personal history of drug and alcohol addiction and bizarre behavior contained in Dale's PSR that he should have investigated the possibility of mental defect defenses to the charges by obtaining a psychiatric evaluation and should have argued a defense of diminished capacity.

To the extent Dale faults Mitchell for failing to discover he had a mental defect or psychological problem that would have been relevant at his plea or sentencing, Dale has provided no specifics about what that problem was and how it would have exculpated him. Mere drug and alcohol addiction, in and of itself, is not generally sufficient to raise a question whether a defendant has a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. *See* 18 U.S.C. § 4241. Nor is it sufficient to raise a question whether a defendant was insane at the time of the offense, *see* 18 U.S.C. § 4242, or to warrant a sentencing reduction, *see* U.S.S.G. § 5K2.13 (reduction not warranted where diminished capacity was caused by voluntary intoxication). As noted earlier in this order, an attorney does not have to investigate every conceivable line of mitigating evidence as long as his decision not to investigate a particular line was reasonable from his perspective at the time he made the decision to forego the investigation. *Wiggins v. Smith*, 539 U.S. 510, 521-22 (2003). There is no reason Mitchell should have been alerted by Dale's run-of-the-mill addictions – along with the sorts of violence that all too often accompany them – that some further psychiatric problem worth investigating lurked beneath the surface.

Nor is there any evidence of what a psychiatric examination would have shown or that it would have supported a mental health or diminished capacity defense. Thus, Dale has failed to demonstrate that he had a psychiatric problem the discovery of which would have had a reasonable chance of changing Mitchell's advice to Dale or the results of the plea or sentencing proceedings. To the extent Dale believes his drug and alcohol addiction was his mental health defect, the Court was well-aware of that addiction and appropriately took it into consideration when selecting Dale's mid-range sentence.

F. <u>Ground 8: Failure to Argue Voluntary Intoxication</u>

Dale faults Mitchell for failing to argue as a defense to the obstruction of justice enhancement that Dale was voluntarily intoxicated and did not have the *mens rea* to warrant the enhancement.

In response to the potential obstruction of justice enhancement based on Dale's alleged threat to Winchester at the Pasta House restaurant, Mitchell was faced with (at least) two possible arguments: (1) argue that Dale did not make the alleged threat or (2) argue that Dale was too intoxicated to be held responsible for the threat. It is a reasonable judgment that arguing both defenses would likely diminish the likelihood of success on either. Admitting alcohol consumption would amount to admitting a violation of Dale's bond conditions and would likely make more credible allegations of a vituperative outburst, which, as Dale points out in his § 2255 motion, often accompanies Dale's consumption of drugs or alcohol. Furthermore, Dale has only pointed to his own self-serving testimony that he was so intoxicated that evening as to be unconscious of his actions. In the absence of any evidence of substantial diminished capacity, and Dale has pointed to none that Mitchell could have discovered, the chances of avoiding an obstruction of justice enhancement on the second theory were slim. Additionally, as noted in the previous section, voluntary intoxication could not have earned Dale a reduction for diminished mental capacity under U.S.S.G. § 5K2.13 because that reduction is only available where the defendant had a significantly diminished mental capacity *during the offense* and is not available where the "significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants." U.S.S.G. § 5K2.13. Thus, it was well within the range of competent assistance for Mitchell to chose to argue only the first theory in opposition to the obstruction enhancement – that Dale made no such threat.

G.      <u>Grounds 11:  Failure to Argue Voluntary Intoxication and Mental Health Defense</u>

Dale faults Brandt for failing to argue on appeal a voluntary intoxication or mental health defense.

Appellate counsel is not deficient for failing to "raise every non-frivolous issue under the sun." *Mason v. Hanks,* 97 F.3d 887, 893 (7th Cir. 1996).  Counsel is only deficient if he "fails to appeal an issue that is both obvious and clearly stronger than one that was raised." *Winters v. Miller*, 274 F.3d 1161, 1167 (7th Cir. 2001); *accord Suggs v. United States*, 513 F.3d 675, 678 (7th Cir. 2008).  Furthermore, a petitioner can show prejudice from this deficiency only by demonstrating "that there is a reasonable probability that, but for the deficient performance of his attorney, the result of the appeal would have been different." *Suggs*, 513 F.3d at 678.

In this case, Brandt argued on appeal that the Court erred in imposing the obstruction of justice enhancement because Dale did not specifically intend to obstruct justice when he threatened Winchester, that Dale's sentence was unreasonable because the Court did not adequately consider his personal characteristics or the sentencing factors listed in 18 U.S.C. § 3553(a) and that the guidelines were effectively impermissibly mandatory in light of the presumption of reasonableness of a within-guideline sentence.  These were relatively strong arguments, and the voluntary intoxication and mental health defense arguments were not.  First, those arguments were not raised at the trial court level so were likely to be deemed waived on appeal, *see O'Neal v. City of Chi.*, 588 F.3d 406, 409 (7th Cir. 2009), or unsupported by the district court record.  Second, for the reasons set forth above, those arguments were unlikely to succeed even if Dale had not waived them.  Brandt did not fail to appeal issues that were obvious and clearly stronger than those he raised.  His selection of arguments on appeal was within the range of competent performance, and Dale has not shown how he was prejudiced from that

selection.

  H.  <u>Ground 12:  Failure to Argue Ineffective Assistance of Counsel</u>

Dale also faults Brandt for failing to argue on appeal that Mitchell provided constitutionally ineffective assistance of counsel at the trial court level for the reasons alleged in the pending § 2255 motion.

Declining to raise a claim of ineffective assistance of counsel on direct appeal is generally a reasonable decision.  Claims of ineffective assistance of counsel are rarely appropriate for direct review since they often turn on events not contained in the record of a criminal proceeding.  *Massaro v. United States*, 538 U.S. 500, 504-05 (2003); *Fountain v. United States*, 211 F.3d 429, 433-34 (7th Cir. 2000).  For example, in this case Dale claims his counsel should have discovered and presented evidence that is not in the record.  On direct appeal, the Court of Appeals would not be able to adequately decide such a claim because that court is limited to the existing district court record.  Raising such a claim on direct appeal risks an adverse, binding decision on an incomplete factual record and is for that reason unwise.  *See Harris v. United States*, 366 F.3d 593, 595 (7th Cir. 2004).  In addition, the district court before which the original criminal trial occurred, not an appellate court, is in the best position to initially make the determination about the effectiveness of counsel in a particular trial and potential prejudice that stemmed from that performance.  *Massaro*,  538 U.S. at 504-05.  For these reasons, Brandt was not deficient for failing to argue on appeal that trial counsel was constitutionally ineffective.

Furthermore, as discussed earlier in this order, Dale has not made any showing that Mitchell was constitutionally ineffective.  In the absence of such a showing, there can be no prejudice from Brandt's failure to raise the issue on direct appeal.

      I.        <u>Ground 13:  Failure to Request Rehearing</u>

Dale believes Brandt was constitutionally deficient for failing to request a rehearing in the Court of Appeals.  However, Dale has not explained how a rehearing would have created a reasonable probability of a different result.  Thus, he has failed to show how Brandt was deficient for failing to ask for one and how he was prejudiced from that failure.

      J.        <u>Ground 14:  Cumulative Error</u>

Finally, Dale claims that the foregoing alleged errors, when viewed together, demonstrate that he did not receive constitutionally effective representation.  After carefully reviewing the record, the Court finds that Dale has not demonstrated a reasonable probability that, but for the foregoing alleged errors by counsel, even if considered in combination, the result of any of the proceedings would have been different.

**IV.**    **Conclusion**

For the foregoing reasons, the Court **DENIES** Dale's § 2255 motion (Doc. 1) and **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:  July 28, 2010**

                                                      s/ J. Phil Gilbert
                                                      **J. PHIL GILBERT**
                                                      **DISTRICT JUDGE**